**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JERRY BOGGS, | : | CASE NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AVELO AIRLINES, INC., | : | |
| | : | |
| Defendant. | : | APRIL 13, 2025 |

## COMPLAINT

### JURISDICTION AND VENUE

1. This action arises under the Americans with Disabilities Act ("ADA") as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq*; and Connecticut State Law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. The Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission in Charge No. 16A-2023-01597 on January 15, 2025.

### PLAINTIFF

6. The Plaintiff, Jerry Boggs ("Plaintiff" or "Boggs"), is a natural person and resident of the Town of Hamden and State of Connecticut.

-1-

## DEFENDANT

7. The Defendant, Avelo Airlines, Inc. ("Defendant" or "AA"), is a Nevada corporation headquartered in Houston, Texas, registered to do business within the State of Connecticut, operating an airline from the Tweed-New Haven Airport at 155 Burr St, New Haven, CT 06512, and employing Plaintiff as a remote employee located at 95 Amity Road, New Haven, Connecticut 06515.

8. Defendant employs more than twenty (20) employees.

## FACTUAL ALLEGATIONS

### A. Boggs's Exemplary Performance.

9. Boggs was employed and assigned to work remotely in Connecticut.

10. Boggs, a black African-American with a disability, is in multiple protected classes.

11. Avelo hired Boggs on February 28, 2023, for the position of Manager of Business Development.

12. During his employment, Boggs continually showed loyalty, diligence, hard work, honesty, and other various attributes that made him a valuable, dedicated employee.

14. Boggs' exceptional and diligent efforts were instrumental in promoting and expanding Avelo's business. He leveraged both his professional network and his outstanding personal reputation within the community to create substantial opportunities for the company.

15. Boggs played a vital role in nurturing a market segment at Avelo, fostering brand loyalty among those who associated him with the company.

16. It appears the company sought to end Boggs' employment while relying on the market segment he helped create, benefiting from the leads he had cultivated to maintain revenue.

17. It came as a surprise when Avelo abruptly decided to terminate Boggs, given his history of exemplary performance. This unfortunate event happened despite his ability to cultivate leads that generated substantial revenue and goodwill for Avelo showcasing his dedication and hard work.

18. Despite Avelo terminating Boggs' employment, it opted not to abandon the market segment he had diligently developed, questioning the veracity of its actions.

**B. Boggs Played a Positive Role in Avelo's Publicity Efforts.**

19. Boggs had been utilized by Avelo to enhance its corporate image and portray the company as an inclusive organization. Unfortunately, this alleged commitment to diversity and inclusivity did not apply to Boggs.

20. Boggs willingly became a part of Avelo's public image, serving as a visual representative in their campaigns, showcasing his dedication to the company's values and goals. However, it became evident that Avelo's intentions were not sincere. Rather than fostering inclusivity, Avelo used Boggs as a token, a strategic move to avoid criticism for institutionalized discrimination.

21. Regrettably, Avelo later terminated Boggs, casting a shadow on their motivations. It appeared that the reason they hired him—his race—was the same reason for his dismissal, indicating a troubling bias.

22. While Avelo continues to reap the rewards of Boggs' hard work, he faces severe anxiety and struggles to recover from the trauma of being unjustly terminated, which has taken

a toll on his mental well-being, as it unjustly questioned his competence and capabilities.

### C.  Boggs Suffered Disability Discrimination

23. Despite being highly qualified, Boggs, a beneficiary of a diversity hiring initiative, was an excellent fit for the Manager of Business Development role.

24. Boggs was specifically recruited to focus on a particular market segment that aligns with the background that he represents. Additionally, his hiring was used to publicly demonstrate Avelo's dedication to diversity and inclusion.

25. Indeed, Boggs was prominently featured in an online article published by Ethnic Online, highlighting Avelo's partnership with various communities, titled "*Changing the GAME for New England Travelers.*" This piece elaborated on Boggs' responsibilities at Avelo, which centered on devising and executing localized partnership strategies to enhance brand recognition and drive customer **conversion.**[1]

26. The article highlighted that Boggs' position at Avelo had a laser-like focus on crafting and executing localized partnership strategies to amplify brand awareness and boost customer conversion. This approach was described as a "community-centric marketing strategy" with the aim of promoting Avelo by presenting compelling incentives for customers to establish direct connections, engage, and transact with the company.

---

[1] (https://ethniconline.net/2023/07/19/featured-story-jerry-boggs-avelo-airlines-manager-of-business-development/)

### D. Boggs Suffered Discrimination and Disparate Treatment by Taking a Protected Right to Medical Leave.

27. On April 25, 2023, Boggs elected to take a half-day off of work to attend a doctor's appointment and was immediately given harsh criticism by his manager, Travis Christ ("Christ") (Caucasian) (no known disability), Head of Marketing for Avelo Airlines. who pointedly stated that Boggs had not been working there long enough to take days off work.

28. Boggs also availed himself of a four-day medical leave due to his hospital confinement from June 11, 2023, to June 14, 2023. For this reason, he was required to forego a business trip to Raleigh, North Carolina, on June 12 to June 14, 2023. Boggs notified Christ that he was admitted to the hospital on June 11, 2203 and told Christ that he had stroke-like symptoms, including numbness in his face.

29. After he was discharged from the hospital, he immediately reported to work on June 15, 2023.

30. He fortunately did not suffer a stroke, but the hospital wanted to take preventive measures due to his past medical history. A battery of tests were performed to rule out any medical issues, resulting in Boggs having to extend his hospital stay.

31. On Boggs' first day back, he contacted his manager to let him know he was ok and ready to get back to work. His only response was "ok, so what are you working on"? This clearly demonstrated a lack of sensitivity and caring for what he went through from a medical perspective.

32. Boggs immediately felt like his worth was diminished and thought his response was inappropriate and lacked sympathy to the potential seriousness of his medical condition.

33. Notwithstanding that Boggs informed Avelo of his medical condition that necessitated a four-day hospitalization, Avelo thereafter failed to participate in the mandated ADA interactive process, and failed to provide written policies related to his disability or Family and Medical Leave Act (FMLA) procedures regarding his rights to take medical leave without any repercussion.

### E. Boggs Was Retaliated Against by Availing Himself of Job-Protected Leave for Medical Purposes.

33. Boggs, prior to his hospitalization, was a diligent and exceptional worker and had not been the subject of any complaint, investigation, or any administrative inquiry in the workplace.

34. The essence of job-protected medical leave is to provide employees with the security that they won't face punishment or penalties for seeking necessary medical treatment, extending this protection throughout their recovery period.

35. It's a legally conferred right aimed at promoting employee well-being and safeguarding against unlawful employer actions. Consequently, employers are legally prohibited from interfering with or retaliating against employees who exercise their rights to medical leave, which includes protection for employees with disabilities.

36. To his severe detriment, for Boggs, his return to work after his hospitalization marked the beginning of a troubling turn. He found himself targeted, deprived of the safeguards against discrimination and disparate treatment, despite the undeniable medical justification for his absence.

37. Unfortunately, Boggs faced termination as a direct consequence of taking job-protected leave for necessary medical reasons.

38. This decision to terminate him came despite his dedicated service, which had significantly contributed to Avelo's revenue stream. Boggs found himself subjected to retaliation for availing of medical leave, a critical aspect of his recovery from a debilitating illness that required in-patient treatment and management.

### F. Avelo Sanctioned Boggs Continuing Discrimination and Disparate Treatment.

39. On June 27, 2023, Boggs was blindsided by a video-conference call with Travis Christ Head of Marketing for all of Avelo Airlines. He was accompanied by Fenny Chawala (no known disability), People Business Partner from Human Resource informing him of the company decision that his position as Manager of Business Development was purportedly being eliminated under the guise of financial reasons.

40. Contrary to Christ's claim, Avelo was not having financial difficulties as evidenced by its ongoing expansion efforts and continuous recruitment of new talent to support these expansions. Avelo has maintained a consistent presence in posting job openings online, both during and after Boggs' unlawful termination. This contradicts Avelo's assertion that it is in dire financial straits.

41. Avelo acknowledges Boggs' exceptional performance, which included delivering revenue-impacting projects and generating substantial income from the market segment he fostered in association with the company.

42. While Christ asserted that Avelo's rationale for eliminating Boggs' role as manager was due to the company's reduction of engagement in this market segment, positioning it as a legitimate business decision, it's essential to critically assess this false assertion.

43. The significance of business development cannot be overstated. These efforts, encompassing strategic partnerships and well-informed decisions, play a crucial role in fostering revenue, expansion, and overall profitability. Consequently, the choice to eliminate a key position ostensibly for the purpose of business enhancement raises valid doubts about the soundness of this decision, suggesting a potential sinister motive. This situation notably highlights the potential discrimination and disparate treatment faced by Boggs, as the termination seems to have been strategically engineered to unlawfully remove him, all while being masked under the pretense of a legitimate justification.

44. In this case, Avelo's termination of Boggs appears to be a calculated and unjust action, disguising itself as a business decision while lacking any factual or legal foundation.

45. It's clear that Avelo specifically singled out Boggs, an African American, with a disability, as the primary target in their purported reduction in force. Interestingly, no other positions within Avelo faced a similar threat, and the role that was eliminated was pivotal for the company's long-term viability. Moreover, Avelo's ongoing expansion contradicts any notion of business setbacks.

46. Furthermore, by removing his position, Boggs was effectively denied meaningful work, solidifying the evidence of discrimination and disparate treatment he endured.

42. Additionally, he was deprived of the right to engage in protected activities, and Avelo's significant resources were mobilized to ensure his illegal termination, leaving him with no room to defend himself.

47. As a result of Avelo's discrimination, failure to accommodate Boggs's disabilities, and retaliation, Boggs has suffered damages.

-8-

**COUNT ONE**

**DISABILITY DISCRIMINATION,
IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,
42 U.S.C. § 12101 et seq.**

48. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-47 with the same force and impact as if fully set forth herein.

49. Plaintiff was hospitalized for four days for symptoms of a stroke.

50. Plaintiff's medical condition substantially limited one or more of his major life activities, including but not limited to working.

51. Plaintiff has a record of his medical condition.

52. Plaintiff is disabled.

53. Plaintiff notified Defendant of his medical conditions.

54. Defendant perceived Plaintiff to be disabled.

55. In the alternative, Defendant perceived Plaintiff to have a physical impairment.

56. Plaintiff was at all times qualified for the position he held.

57. Defendant subjected Plaintiff to disparate treatment.

58. Plaintiff suffered adverse employment actions, including, but not limited to termination of Plaintiff less than two weeks after Plaintiff's emergency hospital stay.

59. Defendant's conduct violated 42 U.S.C. § 12101 et seq. by discriminating against Plaintiff, retaliating against Plaintiff, failing to accommodate Plaintiff, subjecting Plaintiff to disparate treatment on the basis of disability, and terminating Plaintiff.

60. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance,

emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

61. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 et seq.

62. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-61 with the same force and impact as if fully set forth herein.

63. Plaintiff requested reasonable accommodations for his disabilities, including but not limited to time off for an emergency four-day hospital stay.

64. Plaintiff's requested reasonable accommodations would not have caused Defendant an undue hardship.

65. Plaintiff's request for reasonable accommodation was medically necessary.

66. Defendant failed to engage in an interactive process to determine accommodations for Plaintiff upon his return to work.

67. Defendant denied Plaintiff's request for reasonable accommodations.

68. Defendant's conduct violated 42 U.S.C. § 12101 et seq. by discriminating against Plaintiff, retaliating against Plaintiff, failing to accommodate Plaintiff, subjecting Plaintiff to disparate treatment on the basis of disability, and terminating Plaintiff less than two weeks after his emergency hospital stay.

69. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance,

emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

70. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT THREE

### DISABILITY RETALIATION
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT,
### 42 U.S.C. § 12101 et seq.

71. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-70 with the same force and impact as if fully set forth herein.

72. The Plaintiff participated in protected activities by requesting disability accommodations for his emergency four-day hospital stay, including time off from work.

73. Defendant retaliated against Plaintiff by terminating Plaintiff less than two weeks after Plaintiff returned to work.

74. Among the factors that motivated Defendant's actions were Plaintiff's disabilities.

75. Defendant's conduct violated 42 U.S.C. § 12101 et seq. by discriminating against Plaintiff, retaliating against Plaintiff, failing to accommodate Plaintiff, subjecting Plaintiff to disparate treatment on the basis of disability, and terminating Plaintiff.

76. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

77. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FOUR

### RACE DISCRIMINATION,
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

78. Claimant incorporates Paragraphs 1-77 with the same force and impact as if fully set forth herein.

79. Respondent employs more than fifteen employees.

80. Claimant is a member of a protected class on the basis of his race Black/African American.

81. Claimant was at all times qualified for the position he held.

82. Claimant was discriminated against on the basis of his race.

83. Claimant was subjected to disparate treatment based upon his race, including, but not limited to, termination on June 27, 2023.

84. Claimant suffered adverse employment actions, including, but not limited to, termination on June 27, 2023.

85. Among the factors that motivated Respondent's actions were Claimant's race.

86. There is a causal connection between Claimant's race Claimant's termination.

87. Respondent's conduct is unlawful and in violation of Title VII.

88. Respondent violated 42 U.S.C. § 2000e, *et seq* by discriminating against Claimant on the basis of his race.

89. Respondent violated 42 U.S.C. § 2000e, *et seq* by terminating Claimant on the basis of his race.

90. As a result of the Respondent's unlawful conduct, Claimant has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe

benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

91. Claimant seeks damages as a result of Respondent's unlawful conduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest;

5. Trial by jury; and,

6. Such other relief as the Court deems just, fair, and equitable.

THE PLAINTIFF,
JERRY BOGGS

By: _____/s/_____
Michael C. McMinn (#*ct27169*)
Angela Rodriguez (ct#31850)
**THE MCMINN EMPLOYMENT LAW FIRM, LLC**
1000 Lafayette Blvd., Suite 1100
Bridgeport, CT 06604
Tel: (203) 683-6007
Fax: (203) 680-9881
michael@mcminnemploymentlaw.com
angela@mcminnemploymentlaw.com

COUNSEL FOR PLAINTIFF